IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES W. RUTTER,                    )
                                      )
        Plaintiff,                    )
                                      )        Civil Action File
v.                                    )        No. 1:11-cv-3691-RLV
                                      )
ROBERT K. ABBOTT, JR., PARRI          )
S. ABBOTT, ABBOTT & ABBOTT,           )
P.C., STACY K. RUTTER,                )
RICHARD M. HENSEL, JANET E.           )
HENSEL, JEANNE D. WOODS,              )
HUFF & WOODS, P.C., ANTHONY           )
C. LEVITAS, BEHAVIORAL                )
INSTITUTE OF ATLANTA, LLC,            )
and SOLID GOLD PROTECTION             )
SERVICE, INC.,                        )
                                      )
        Defendant.                    )

**DEFENDANTS ANTHONY C. LEVITAS AND BEHAVIORAL INSTITUTE
OF ATLANTA, LLC'S REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

Come now Defendants Anthony C. Levitas and Behavioral Institute of

Atlanta, LLC (hereinafter "these defendants" when referred to collectively) and

submit the following brief in support of their Motion to Dismiss or, alternatively,

in support of their Motion for Summary Judgment.  (See Doc. 18.)  For the

following reasons, Plaintiff fails to state an actionable claim against these defendants, and his claims against these defendants should therefore be dismissed.

## I.   **INTRODUCTION**

Plaintiff's Complaint purports to allege 17 substantive counts against these defendants,[1] namely: (a) invasion of privacy under 18 U.S.C. §§ 2510, *et seq.* (Count 1); (b) intrusion upon seclusion, solitude, and private affairs, under Georgia common law (Count 3); (c) public disclosure of private facts, under Georgia common law (Count 5); (d) placement in false light in the public eye, under Georgia common law (Count 7); (e) invasion of privacy under O.C.G.A. § 16-11-62 (Counts 8, 10, 12, 14); (f) conspiracy to commit the counts alleged in (a) through (e), above (Counts 2, 4, 6, 9, 11, 13, and 15); (g) intentional infliction of emotional distress, under Georgia common law (Count 20); (h) negligent infliction of emotional distress, under Georgia common law (Count 21).   Plaintiff also alleges two ancillary counts against these defendants: (i) attorney's fees and litigation costs pursuant to O.C.G.A. § 13-6-11 (Count 19); and (j) punitive damages pursuant to O.C.G.A. § 51-12-5.1 (Count 26).

---

[1] Counts 16, 17, 18, 22, 23, 24 of Plaintiff's Complaint do not allege any wrongdoing by these defendants and, therefore, are not addressed in this memorandum.

As explained below, all of these claims are subject to dismissal because Defendant Levitas ("Dr. Levitas") is not alleged to have engaged in and did not engage in, any actionable behavior.  As Plaintiff's claims against Defendant Behavioral Institute of Atlanta, LLC ("BIA") are premised entirely upon its alleged vicarious liability for the alleged actions of its employee, Dr. Levitas (see Complaint, Count 25), Plaintiff's claims against BIA are subject to dismissal for the same reasons.

## II.   STATEMENT OF RELEVANT FACTS

Dr. Levitas is a licensed clinical psychologist with over 25 years of experience providing mental health services to children, adolescents, adults, families, and couples.  (Affidavit of Anthony C. Levitas, Psy.D., ¶ 3, attached hereto as Exhibit "A.")  Dr. Levitas conducted therapy sessions with the three minor children of Defendant Stacy Rutter ("Mrs. Rutter") and her then-husband, Charles Rutter, the Plaintiff herein (hereinafter "Mr. Rutter" or "Plaintiff").  (Levitas Aff., ¶ 4.)  Through these therapy sessions, Dr. Levitas developed the professional opinion that the two younger Rutter children, A.R. (born November 11, 2002), and C.R (born December 20, 2006), had behavioral and emotional issues, and Dr. Levitas was concerned that they had experienced emotional trauma.  (Id.)  According to Dr. Levitas, the oldest Rutter child, L.R. (born January 11,

2000), may also have experienced emotional trauma but did not experience the same level of trauma symptoms experienced by the younger two children.  (Id.)

On November 1, 2010, during the course of a session with the Rutter children, Mrs. Rutter showed Dr. Levitas four video recordings depicting Mr. Rutter with his children.  (Levitas Aff., ¶ 5.)  As a result of his review of the recordings, Dr. Levitas developed grave concerns for the Rutter children.  (Levitas Aff., ¶ 6.)

As a recognized expert in child and family issues, Dr. Levitas is regularly appointed by Atlanta-area courts to conduct custody evaluations, parental fitness evaluations, and psychological evaluations.  (Levitas Aff., ¶ 3.)  During the course of his therapy sessions with the Rutter children, Mrs. Rutter's attorney asked Dr. Levitas to provide an affidavit outlining his professional opinions for use in then-pending divorce proceedings between Mr. and Mrs. Rutter in the Superior Court of Cherokee County.  (Levitas Aff., ¶ 12.)  On March 12, 2011, in an attempt to help ensure the safety and welfare of the Rutter children, Dr. Levitas provided an affidavit in the Rutters' divorce proceedings (attached as an exhibit to these defendants' Memorandum of Law in Support of Motion to Dismiss (Doc. 18-2) and as an attachment to Exhibit "A" hereto, and hereinafter referred to as the "March 2011 affidavit").  (Levitas Aff., ¶¶ 13-14.)  Dr. Levitas believes that he had

a professional, moral and legal duty to provide his March 2011 affidavit in the Rutters' divorce proceedings. (Levitas Aff., ¶ 19.)

The contents of the March 2011 affidavit Dr. Levitas submitted to the court in the Rutters' divorce proceedings were true and accurate and simply outlined Dr. Levitas' professional opinion about what would be in the best interests of the Rutter children. (Levitas Aff., ¶ 15.) Although his opinion was in part based on the recordings of Mr. Rutter and the Rutter children which Mrs. Rutter had showed to him, Dr. Levitas did not disclose any actual video content to the court or to any other person at any other time. (Levitas Aff., ¶ 16.) In his March 2011 affidavit, Dr. Levitas merely generally described his professional opinion regarding Mr. Rutter's behavior as depicted in the recordings. (Levitas Aff., ¶ 16.) Except as indicated in his March 2011 affidavit, Dr. Levitas never discussed, provided, transmitted, or published the contents of the recordings to anyone. (Levitas Aff., ¶ 17.)

Contrary to Mr. Rutter's unsupported contentions in the instant lawsuit, Dr. Levitas was not motivated to provide the March 2011 affidavit for financial gain or the possibility of future financial gain related to expert testimony work in the Rutters' divorce proceedings or any other matter. (Levitas Aff., ¶ 18.) Instead,

Dr. Levitas acted upon what he believed to be a professional, moral, and legal duty to protect the Rutter children's best interests. (Levitas Aff., ¶¶ 15, 19.)

To clarify the circumstances under which Dr. Levitas came to view the aforementioned recordings of Mr. Rutter and the Rutter children, Dr. Levitas had no involvement in the procurement of the recordings. (Levitas Aff., ¶ 9.) He had no knowledge of the recordings at the time of their procurement, and he did not encourage, request, or arrange for any recordings to be made. (Id.) Dr. Levitas never stepped foot on the Rutters' property or in their residence, nor did he request that anyone do so on his or any other persons' behalf. (Id.) Dr. Levitas has never made a recording of Mr. Rutter, nor has he ever asked anyone to do so on his or any other person's behalf. (Id.)

Dr. Levitas never witnessed nor was aware of any real-time video or real-time audio of Mr. Rutter. (Levitas Aff., ¶ 8.) He never had possession of the recordings of Mr. Rutter and the Rutter children. (Levitas Aff., ¶ 10.) He never copied the recordings, nor did he ever make the recordings available to any person or entity. (Levitas Aff., ¶ 11.)

Mrs. Rutter did not tell Dr. Levitas why, when, or how the recordings of Mr. Rutter were procured, and Dr. Levitas did not ask Mrs. Rutter why, when, or how the recordings were procured. (Levitas Aff., ¶ 7.)

Considering fairness and the interests of justice, it is difficult to imagine how Dr. Levitas (or BIA, his employer) could be subject to civil liability by merely viewing the recordings shown to him and then providing his professional opinion to a court of law regarding the Rutter children's best interests. As set forth below, the law also recognizes that civil liability cannot be premised upon such dutiful conduct.

## III.   ARGUMENT AND CITATION OF AUTHORITY

The individual counts of Plaintiff's Complaint and the specific reasons why Plaintiff cannot state a claim against these defendants are discussed in turn.

### A.   Invasion of privacy, 18 U.S.C. §§ 2510, *et seq.* (Count 1)

Plaintiff first alleges that these defendants violated the Federal Electronics Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.* (the "Federal Wiretap Act"), by "participating in the installation of secret recording devices inside Plaintiff's home." (Complaint, ¶ 66.) "The Federal Wiretap Act provides that a person who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication' is subject to criminal sanctions and civil liability." Tapley v. Collins, 211 F.3d 1210, 1213 (11th Cir. 2000) (quoting 18 U.S.C. § 2511(1)(a)). However, "the mere receipt of a wire communication, which has been unlawfully

intercepted by a third party, does not violate the Act." Conner v. Tate, 130 F. Supp. 2d 1370, 1377 (N.D. Ga. 2001). Therefore, Dr. Levitas did not violate the Act by simply viewing the recordings that Mrs. Rutter showed to him.

The Federal Wiretap Act also subjects to civil and criminal liability anyone who intentionally discloses the contents of an illegally intercepted communication to any other person or uses the contents of an intercepted communication, knowing or having reason to know that it was illegally obtained. 18 U.S.C. §§ 2511(1)(c) and (d). Accord Tapley, 211 F.3d at 1213. Dr. Levitas was asked to review the videos by Mrs. Rutter who gave no suggestion as to how the recordings were obtained. Further, he was asked by an attorney to provide an affidavit, including his professional assessment of Mr. Rutter's behavior and its impact on the Rutter children. As Dr. Levitas did not know or have reason to know that the recordings were allegedly illegally obtained (Levitas Aff., ¶¶ 7, 9, 12; Doc. 18-2), he cannot be found to have violated §§ 2511(1)(c) or (d) of the Act.

Additionally, the Federal Wiretap Act states in unambiguous terms:

> Any person who has received, by any means authorized by this chapter [18 U.S.C. §§ 2510, *et seq.*] any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in ***any*** proceeding held

8

under the authority of the United States or of any State or political subdivision thereof."

18 U.S.C. § 2517(3) (emphasis added). As established above, Dr. Levitas did not violate the Federal Wiretap Act by merely viewing the recordings that Mrs. Rutter brought to him. Conner v. Tate, 130 F. Supp. 2d 1370, 1377 (N.D. Ga. 2001). Under these circumstances, Dr. Levitas was authorized per § 2517(3) to provide his March 2011 affidavit in the Rutters' state-court divorce proceedings.

For these reasons, Plaintiff cannot state a claim against Dr. Levitas pursuant to the Federal Wiretap Act, and this Court should accordingly dismiss Plaintiff's federal "invasion of privacy" claim against these defendants.[2]

## B.     Intrusion upon Plaintiff's seclusion, solitude, and private affairs, under Georgia common law (Count 3)

Georgia common law recognizes four kinds of invasion of privacy for which a right of action exists, and among these is a tort for intrusion upon the seclusion or

---

[2] Moreover, the Federal Wiretap Act provides a complete defense where a defendant relies in good faith upon statutory authority. Tapley, 211 F.3d at 1213 (citing 18 U.S.C. § 2520(d)). "A good faith reliance on ... a legislative authorization[ ] or a statutory authorization ... is a complete defense against any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2520(d)(1). As O.C.G.A. §§ 51-5-7(2) and 51-5-8 deem "privileged" any statements "made in good faith in the performance of a legal or moral private duty" or "filed in a court of competent jurisdiction," these statutes provide alternate grounds upon which to dismiss Plaintiff's federal "invasion of privacy" claim against these defendants. (For further discussion of O.C.G.A §§ 51-5-7(2) and 51-5-8, and their application to this case, please refer to Section "C," *infra*.)

solitude of a person or into his private affairs.  Benedict v. State Farm Bank, FSB, 309 Ga. App. 133, 135 (2011).  Traditionally, the tort of "intrusion" consisted only of "intrusion upon physical solitude or seclusion analogous to a trespass in plaintiff's home or other quarters, such as hospital or hotel rooms," though "Georgia courts have extended the principle beyond physical intrusion to include prying and intrusions into private concerns, such as eavesdropping by microphone and peering into the windows of a home."  Summers v. Bailey, 55 F.3d 1564, 1566 (11th Cir. 1995).  Regardless, the law in Georgia is clear that the tort of intrusion requires an intrusion.

Any alleged intrusion in this case was committed by persons other that Dr. Levitas.  Dr. Levitas had no involvement in the procurement of the recordings.  He had no knowledge of the recordings at the time of their procurement, and he did not encourage, request, or arrange for any recordings.  He never stepped foot on the Rutters' property or in their residence, nor did he request that anyone do so on his or any other persons' behalf.   Dr. Levitas has never made a recording of Mr. Rutter, nor has he ever asked anyone to do so on his or any other persons' behalf. (Levitas Aff., ¶ 9.)  As Dr. Levitas did not engage in an intrusion, Plaintiff cannot state a claim against these defendants for intrusion under Georgia law.

## C.    Public disclosure of private facts, under Georgia common law (Count 5)

Georgia law also recognizes the tort of public disclosure of private facts ("public disclosure").   Williams v. Coffee County Bank, 168 Ga. App. 149, 149 (1983).   "[T]here are at least three necessary elements for recovery under this theory: (a) the disclosure of private facts must be a public disclosure; (b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; (c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances." Id.

Plaintiff cannot satisfy these elements for at least two separate reasons.  First and foremost, Dr. Levitas' March 2011 affidavit to the court in the Rutters' divorce proceedings is not a "public disclosure" because it is a privileged communication under Georgia law.  O.C.G.A. § 51-5-7(2) deems "[s]tatements made in good faith in the performance of a legal or moral private duty" to be privileged communications.  Because Dr. Levitas believed that he had a professional, moral, and legal duty to provide his March 2011 affidavit in the Rutters' divorce proceedings in order to protect the Rutter children's best interests, § 51-5-7(2) exempts Dr. Levitas from liability for the tort of public disclosure.  (Levitas Aff., ¶ 19.)

In addition, O.C.G.A. § 51-5-8 deems "privileged" "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged."   The Georgia Court of Appeals has clarified that this privilege is an absolute privilege. Garner v. Roberts, 238 Ga. App. 738, 740 (1990).   Accord Cleveland v. Williamson, 194 Ga. App. 476, 477 (1990).

The Court of Appeals has also clarified that § 51-5-8's privilege is not strictly limited to "pleadings" within the meaning of O.C.G.A. § 9-11-7(a) but rather extends to include all court-filed documents.   Williams v. Stepler, 227 Ga. App. 591, 595 (1997) ("Indeed, we have generally described the coverage of the privilege to include "official court documents" and acts of "legal process.")   See also Vito v. Paley, 269 Ga. App. 547, 549 (2004) (holding that an expert physician's affidavit was privileged under O.C.G.A. § 51-5-8).   As Dr. Levitas' March 2011 affidavit is a court document (see Dr. Levitas' March 2011 affidavit, attached to Exhibit "A"), § 51-5-8 also exempts Dr. Levitas from liability for public disclosure.

Second, the only new information provided to the court by Dr. Levitas' affidavit was Dr. Levitas' professional opinion regarding the best interests of the

Rutter children.   All of the facts Plaintiff alleges to have been disclosed by Dr. Levitas' March 2011 affidavit were already matters of public record because all of the facts contained in that affidavit had already been disclosed by Mr. Rutter in the course of the Rutters' court proceedings.  Cox Communications, Inc. v. Lowe, 173 Ga. App. 812, 814 (1985) ("There is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life which are matters of public record" (citing Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 494, 95 S. Ct. 1029, 43 L.Ed.2d 328 (1975)); Shiver v. Valdosta Press, 82 Ga. App. 406, 413 (1950) ("[T]his suit became a matter of public record the moment it was marked filed in the clerk's office....")

Specifically, Mr. Rutter filed the affidavit of Dr. William B. Moon, Mr. Rutter's own treating psychologist, in the Superior Court of Cherokee County on January 13, 2011. (A stamped filed copy of Dr. Moon's January 13, 2011 affidavit is attached hereto as Exhibit "B.")  Dr. Moon's affidavit—filed by Mr. Rutter two full months prior to the filing of Dr. Levitas' March 2011 affidavit—discloses in much greater detail the contents of the exact recordings of Mr. Rutter and his children referred to by Dr. Levitas in his March 2011 affidavit.  (Compare Dr. Moon's January 2011 Affidavit (Exhibit "B") with Dr. Levitas' March 2011

13

Affidavit (attached to Exhibit "A.")) Under these circumstances, any and all facts contained in Dr. Levitas' March 2011 affidavit were already matters of public record per Mr. Rutter's filing of Dr. Moon's January 2011 affidavit with the superior court.

Because the facts contained in Dr. Levitas' March 2011 affidavit were already matters of public record, those facts were not "private" as required to state a claim against these defendants for the tort of public disclosure. See also Haughton v. Canning, 287 Ga. App. 28, 31 (2007) ("Without a public disclosure, [plaintiff's] invasion of privacy claim ... does not present a jury question as a matter of law.").

For both of these reasons, Plaintiff's claim against these defendants for the tort of public disclosure fails as a matter of law and should be dismissed accordingly.

**D.   False light, under Georgia common law (Count 7)**

Unlike public disclosure, the tort of false light in the public eye "does not require the invasion of something secret, secluded or private; it does require falsity or fiction." Cabaniss v. Hipsley, 114 Ga. App. 367, 375 (1966). As in an action for defamation, truth is an absolute defense. Id. Dr. Levitas' March 2011 affidavit in the Rutters' divorce proceedings was truthful and accurate (Levitas Aff., ¶ 15),

and to the extent the affidavit described Mr. Rutter's behavior as depicted in the subject recordings (Levitas Aff, ¶ 16), it did not depict Mr. Rutter as "something or someone which he is not." Brown v. Capricorn Records, Inc., 136 Ga. App. 818, 819 (1975). Mr. Rutter therefore cannot establish a claim against these defendants for the tort of false light.

**E.**     **Invasion of privacy under O.C.G.A. § 16-11-62 (Counts 8, 10, 12, 14)**

In addition to the above common-law invasion of privacy claims, Plaintiff attempts to bring claims against these defendants for invasion of privacy under sections (1), (2), (3), and (6) of O.C.G.A. § 16-11-62. Those sections state in pertinent part:

> It shall be unlawful for:
>
> (1) Any person in a *clandestine manner* intentionally to overhear, transmit, or record or attempt to overhear, transmit, or record the private conversation of another which shall originate in any private place;
>
> (2) Any person, through the *use* of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view....;
>
> (3) Any person *to go on or about the premises of another* or any private place, except as otherwise provided by law, for the purpose of invading the privacy of others by eavesdropping upon their conversations or secretly observing their activities;
> …

> (6) Any person to sell, give, or distribute, ***without legal authority***, to any person or ***entity any photograph, videotape, or record, or copies thereof***, of the activities of another which occur in any private place and out of public view without the consent of all persons observed....

(Emphases added.)   Not surprisingly, Plaintiff's state-law statutory "invasion of privacy" claims fail for many of the same reasons as his common law "invasion of privacy" claims.

Just as the common-law tort of intrusion requires an actual intrusion by the alleged actor, O.C.G.A. §§ 16-11-62(1) and (3) require, respectively, either "clandestine" action or actual entry on the premises of another.  As previously established, any alleged clandestine actions in this case were performed by persons other that Dr. Levitas.  Dr. Levitas had no involvement in the procurement of the recordings.   He had no knowledge of the recordings at the time of their procurement, and he did not encourage, request, or arrange for any recordings.  He never stepped foot on the Rutters' property or in their residence, nor did he request that anyone do so on his or any other persons' behalf. (Levitas Aff., ¶ 9.)  As Dr. Levitas neither acted in a clandestine manner regarding procurement of the subject recordings nor entered upon the Rutters' premises, Plaintiff cannot state a claim against these defendants under §§ 16-11-62(1) or (3).

Similarly, Plaintiff cannot state a claim against these defendants under O.C.G.A. § 16-11-62(2) as that section requires actual "use" of a surveillance device. Dr. Levitas could not have violated this provision by simply viewing the recordings that Mrs. Rutter showed to him, and Dr. Levitas never witnessed nor was aware of any real-time video or real-time audio of Mr. Rutter. (Levitas Aff., ¶¶ 5, 8, 9.) Under the clear facts before this Court, these defendants are entitled to dismissal of Plaintiff's claim pursuant to § 16-11-62(2) because Dr. Levitas did not use any surveillance device.

Finally, for two separate reasons, Plaintiff cannot state a claim against these defendants under O.C.G.A. § 16-11-62(6), which prohibits "[a]ny person to sell, give, or distribute, *without legal authority*, to any person or entity *any photograph, videotape, or record, or copies thereof*, of the activities of another which occur in any private place and out of public view without the consent of all persons observed...." (Emphasis added.)   First, Plaintiff did not sell, give, or distribute recording(s) of Mr. Rutter to anyone. (Levitas Aff, ¶¶ 10, 11, 17.)   Dr. Levitas simply provided his professional opinion by way of an affidavit based, in part, on the recordings of Mr. Rutter. (Levitas, ¶¶ 15, 16.)   Dr. Levitas did not attach the recordings to his March 2011 affidavit or disclose the recordings themselves at any other time. (Levitas, ¶¶ 16-17.)   Because, under the plain

language of § 16-11-62(6), liability requires distribution of the actual recordings, Dr. Levitas cannot be found liable for simply providing his expert affidavit based on his review of the recordings.

Second, Plaintiff cannot state a claim against these defendants under O.C.G.A. § 16-11-62(6) because Dr. Levitas had legal authority to provide his March 2011 affidavit in the Rutters' divorce proceedings.  As established above, Dr. Levitas' March 2011 affidavit to the Court was "privileged" pursuant to O.C.G.A. §§ 51-5-7(2) (statements made in good faith in the performance of a legal or moral private duty) and 51-5-8 (statements made in court proceedings), and, furthermore, all of the facts contained in his affidavit were already matters of public record.  (See Section "C," *supra*, for a detailed discussion of these legal defenses to claims of invasion of privacy.)

For all of the above reasons, Plaintiff's claims against these defendants pursuant to O.C.G.A. § 16-11-62 are subject to dismissal.

**F.**   **Conspiracy to commit the counts alleged in (A) through (E), above (Counts 2, 4, 6, 9, 11, 13, and 15)**

The essential element of a claim for civil conspiracy is that the defendants *agreed* to commit an illegal act. Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979); Association Servs. v. Smith, 249 Ga. App. 629, 634-635 (2001).  However, the facts before the Court establish that Dr. Levitas did not have any involvement

in or prior knowledge of the alleged surreptitious entry into Plaintiff's home or the subsequent recording of Plaintiff inside his home.  (Levitas Aff., ¶ 9.)  Under the circumstances of this case, Dr. Levitas cannot be found to have agreed with anyone to commit any alleged illegal act.  (See generally Levitas Aff.)

Additionally, a claim for civil conspiracy must be premised upon actionable conduct.  "A civil conspiracy claim for damages requires a showing that two or more persons have engaged in conduct which constitutes a tort." Association Servs., 249 Ga. App. at 634-635.  As explained throughout this memorandum, Plaintiff's Complaint fails to state any actionable claim against Dr. Levitas. Therefore, Plaintiff's Complaint cannot form the basis of a civil conspiracy claim against him.  Cook v. Robinson, 216 Ga. 328, 328-29 (1960); Association Servs., 249 Ga. App. at 634-635.

For these reasons, Plaintiff's civil conspiracy claims against these defendants are deficient as a matter of law and should be dismissed.

## G.    Intentional infliction of emotional distress (Count 20)

"In order to recover for intentional infliction of emotional distress, a plaintiff must prove four essential elements: '(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4)

The emotional distress must be severe.'" Walker v. Walker, 293 Ga. App. 872, 874 (2008) (quoting Hendrix v. Phillips, 207 Ga. App. 394, 395 (1993)). "Liability for intentional infliction of emotional distress has been found ... only when a defendant's conduct is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." MARTA v. Mosley, 280 Ga. App. 486, 491 (2006) (internal quotation marks and citation omitted). Whether conduct is sufficiently outrageous or extreme is a question of law for the court. Ashman v. Marshall's of MA, Inc., 244 Ga. App. 228, 229 (2000).

Here, Dr. Levitas simply reviewed recordings of Mr. Rutter shown to him by Mrs. Rutter and—out of concern for the Rutter children and pursuant to what he believed to be a professional, moral, and legal duty—provided a true and accurate affidavit to the court in the Rutter's divorce proceedings. (See Levitas Aff., ¶¶ 5-7, 9, 13, 15, 19.)   Upon review of Georgia case law regarding what constitutes "extreme and outrageous" conduct, Dr. Levitas' conduct clearly does not rise to the requisite level to be actionable for intentional infliction of emotional distress. Compare, e.g., Todd v. Byrd, 283 Ga. App. 37 (1996) (finding conduct to be sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress where store employees accused a nine-year-old girl of

shoplifting underwear, took her to a bathroom with feces on the wall, caused her to reveal her own underwear, "and put dirty, bloody, smelly underwear in her face for her to see") (overruled on other grounds); Sevcech v. Ingles Mkts., 222 Ga. App. 221 (1996) (finding conduct to be sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress where grocery store employees took plaintiff into store office, accused him of shoplifting, assaulted and battered him, and had him arrested despite the fact that the employees found no stolen merchandise on plaintiff); American Fin. & Loan Corp. v. Coots, 105 Ga. App. 849 (1962) (finding conduct to be sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress where defendant terrorized frightened plaintiff at gunpoint in an attempt to collect a bill).

As a matter of law, Dr. Levitas' conduct was not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." MARTA, 280 Ga. App. at 491. Therefore, Plaintiff's intentional infliction of emotional distress claim against these defendants is deficient as a matter of law and should be dismissed.

## H.   Negligent infliction of emotional distress (Count 21)

Plaintiff's claim against these defendants for negligent infliction of emotional distress is barred by Georgia's impact rule. "Georgia applies the impact

rule to cases in which a party seeks to recover for emotional distress in a claim involving negligent conduct." Clarke v. Freeman, 302 Ga. App. 831, 836 (2010). "The impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." Id. It is unclear exactly what negligent conduct Plaintiff alleges Dr. Levitas to have engaged in. Regardless, as Plaintiff has not alleged that Dr. Levitas' conduct resulted in a physical impact or caused him physical injury, Plaintiff's claim for negligent infliction of emotional distress fails as a matter of law.

## I.      Attorney's fees and litigation costs, O.C.G.A. § 13-6-11 (Count 19)

Plaintiff's claim against these defendants for attorney's fees and litigation costs pursuant to O.C.G.A. § 13-6-11 fails as a matter of law for two separate reasons. First, a claim under § 13-6-11 must be premised upon a meritorious underlying claim. Morris v. Pugmire Lincoln Mercury, Inc., 641 S.E.2d 222, 241 (2007). Because Plaintiff's Complaint fails to state any actionable substantive claim against Dr. Levitas, his claim for attorney's fees and litigation costs is subject to dismissal.

In addition, recovery under O.C.G.A. § 13-6-11 would require a showing that Dr. Levitas "has acted in bad faith, has been stubbornly litigious, or has caused

the plaintiff unnecessary trouble and expense."  Since Plaintiff does not allege any

facts supporting a finding that Dr. Levitas has acted in bad faith, been stubbornly

litigious, or caused Plaintiff unnecessary trouble and expense, and there is nothing

in the record suggesting that these defendants engaged in that type of culpable

conduct, Plaintiff's claim for attorney's fees and litigation costs is subject to

dismissal for this reason as well.

## J.     Punitive damages, O.C.G.A. § 51-12-5.1 (Count 26)

Plaintiff's claim against these defendants for punitive damages pursuant to

O.C.G.A. § 51-12-5.1 fails as a matter of law for the same reasons.  First, just as in

a claim for attorney's fees, a claim for punitive damages must be premised upon a

meritorious underlying claim.  Morris, 641 S.E.2d at 241.  Because Plaintiff's

Complaint fails to state any actionable substantive claim against Dr. Levitas, his

claim for punitive damages is subject to dismissal.

Additionally, to recover punitive damages under § 51-12-5.1, Plaintiff

would have to show by clear and convincing evidence that "the defendant's actions

showed willful misconduct, malice, fraud, wantonness, oppression, or that entire

want of care which would raise the presumption of conscious indifference to

consequences."  O.C.G.A. § 51-12-5.1(b).  Accord Golden Atlanta Site Dev., Inc.

v. Tilson, 299 Ga. App. 646, 653 (2009).  Since neither Plaintiff's Complaint

allegations nor the factual record before the Court support a finding that Dr. Levitas' actions rose to the requisite level of egregiousness, Plaintiff's claim for punitive damages fails for this reason as well.

## IV.   CONCLUSION

For the above reasons,[3] as well as for the reasons stated in his initial brief, Plaintiff fails to state a claim against Dr. Levitas or BIA, his employer.  Therefore, these defendants respectfully request that the Court grant their motion and dismiss all of Plaintiff's claims against them.

(Signature on following page)

---

[3] These defendants recognize that other potentially dispositive arguments exist regarding many of the issues presented here.  See, e.g., Bartnicki v. Vopper, 532 U.S. 514, 535 (2001) (finding that a third-party's "illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern"); United States v. Aguilar, 515 U.S. 593, 605 (1995) ("the Government may not generally restrict individuals from disclosing information that lawfully comes into their hands in the absence of a 'state interest of the highest order.'"); Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 494-495 (1975) ("the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record. The conclusion is compelling when viewed in terms of the First and Fourteenth Amendments and in light of the public interest..."). These defendants did not raise these issues in this motion to dismiss because this Court need not decide this motion on constitutional grounds.  These defendants, however, reserve their right to raise such constitutional issues if necessary in future motions and proceedings.

This <u>21</u><sup>st</sup> day of December, 2011.

THE WEATHINGTON FIRM, P.C.

*s/ Paul E. Weathington*
Paul E. Weathington
Georgia Bar No. 743120
pweathington@weathingtonfirm.com

*s/ Amy M. Hoffman*
Amy M. Hoffman
Georgia Bar No. 359606
ahoffman@weathingtonfirm.com

*Attorneys for Defendants Anthony C. Levitas and Behavioral Institute of Atlanta, LLC*

191 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30303
(404) 524-1600 (telephone)
(404) 524-1610 (facsimile)

## CERTIFICATE OF COMPLIANCE

The undersigned certifies pursuant to Local Rule 7.1(D) that this brief has been prepared in 14-point Times New Roman font, which has been approved by Local Rule 5.1(C).

This 21st day of December, 2011.

> s/ Amy M. Hoffman
> Amy M. Hoffman
> Georgia Bar No. 359606
> ahoffman@weathingtonfirm.com
>
> *Attorney for Defendants Anthony C. Levitas and Behavioral Institute of Atlanta, LLC*

THE WEATHINGTON FIRM, P.C.
191 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30303
(404) 524-1600 (telephone)
(404) 524-1610 (facsimile)

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHARLES W. RUTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No. 1:11-cv-3691-RLV |
| | ) | |
| ROBERT K. ABBOTT, JR., PARRI | ) | |
| S. ABBOTT, ABBOTT & ABBOTT, | ) | |
| P.C., STACY K. RUTTER, | ) | |
| RICHARD M. HENSEL, JANET E. | ) | |
| HENSEL, JEANNE D. WOODS, | ) | |
| HUFF & WOODS, P.C., ANTHONY | ) | |
| C. LEVITAS, BEHAVIORAL | ) | |
| INSTITUTE OF ATLANTA, LLC, | ) | |
| and SOLID GOLD PROTECTION | ) | |
| SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF ANTHONY C. LEVITAS, PSY.D.

Personally appeared before the undersigned attesting officer, duly authorized to administer oaths, Anthony C. Levitas, Psy.D., who after being duly sworn, deposes and states under oath the truth as follows:

1.

My name is Anthony C. Levitas. I am over the age of majority and am otherwise competent to give this Affidavit. I have personal knowledge of the matters hereafter referred to based on my individual recollection, and I give this

Affidavit based upon my personal knowledge for use in the above-referenced matter.

2.

I am a clinical psychologist licensed to practice in the State of Georgia.

3.

I specialize in helping children and families and have over 25 years of experience providing mental health services to children, adolescents, adults, families, and couples.  As a recognized expert in child and family issues, I am regularly appointed by Atlanta-area courts to conduct custody evaluations, parental fitness evaluations, and psychological evaluations.

4.

On or about August 23, 2010, I met with Stacy Rutter, and shortly therafter I began therapy sessions with her three minor children to wit:  L.R. (born January 11, 2000), A.R. (born November 11, 2002), and C.R. (born December 20, 2006). It is my professional opinion that the two youngest children have behavioral and emotional issues, and I am concerned that they have experienced emotional trauma.  It is possible that the oldest child has also experienced emotional trauma but is not experiencing the level symptoms experienced by the younger two children.

5.

On November 1, 2010, during the course of a professional session with the Rutter children, Stacy Rutter showed me four video recordings depicting Charles Rutter.

6.

As a result of my review of the recordings, I had (and still have) grave concerns for the Rutter children.

7.

Mrs. Rutter did not tell me why, when or how the aforementioned recordings were procured, and I did not ask Mrs. Rutter why, when or how the recordings were procured.

8.

I never witnessed nor was aware of any real-time video or real-time audio of Mr. Rutter.

9.

To be clear, I had no involvement in the procurement of the recordings. I had no knowledge of the recordings at the time of their procurement. I did not encourage, request, or arrange for any recordings. I have never stepped foot on the Rutters' property or in their residence, nor have I ever requested that anyone do so

on my or any other persons' behalf.  I have never made a recording of Mr. Rutter, nor have I ever asked anyone to do so on my or any other persons' behalf.

10.

I never had possession of the recordings.

11.

I never copied the recordings, nor did I make the recordings available to any person or entity.

12.

I was asked by Mrs. Rutter's attorney to provide an affidavit outlining my professional opinions for use in the divorce proceedings between Mr. and Mrs. Rutter, to wit, Rutter v. Rutter, Cherokee County Superior Court, Case No. 10-CV-879-FM.

13.

On March 12, 2011, in an attempt to help ensure the safety and welfare of the Rutter children, I provided an affidavit in the divorce proceedings between Mr. and Mrs. Rutter.

4

14.

A true and correct copy of my affidavit was attached as Exhibit "A" to Defendants' Memorandum in Support of Motion to Dismiss. (Hereinafter, "Exhibit "A.")

15.

In my affidavit to the court in the Rutters' divorce proceedings, I outlined my professional opinions regarding the best interests of the Rutter children. The contents of that affidavit are true and accurate.

16.

My affidavit was in part based on the recordings of Mr. Rutter that Mrs. Rutter showed to me, and in my affidavit I generally described Mr. Rutter's behavior as depicted in the recordings. (See Exhibit "A.") I did not, however, disclose any actual video content to the court or to any other person at any other time.

17.

Except as indicated in Exhibit "A," I have never discussed, provided, transmitted, or published the contents of the aforementioned recordings to anyone.

18.

I was not motivated to provide the affidavit for financial gain or the possibility of future financial gain related to expert testimony work in the Rutters' divorce proceedings or any other matter.

19.

I believe I had a professional, moral and legal duty to provide my affidavit in the Rutters' divorce proceedings.

FURTHER AFFIANT SAITH NOT.

This 20th day of December, 2011.

_____
Anthony C. Levitas, Psy.D.

Sworn to and subscribed before me
this 20th day of December, 2011.
_____
Notary Public

My Commission Expires: MAY 3, 2014

6

COPY
TO
ATTORNEY

**IN THE SUPERIOR COURT FOR THE COUNTY OF CHEROKEE**
**STATE OF GEORGIA**

STACY K. RUTTER,

    Plaintiff,

vs.

CHARLES W. RUTTER, JR.,

Defendant.

Civil Action File No.

10-CV-879-FM

## AFFIDAVIT OF DR. ANTHONY C. LEVITAS, PSY.D.

The undersigned, appearing before me, an officer duly authorized and qualified by law to administer oaths, hereby swears, states and deposes as follows:

1.

That I am Dr. Anthony Levitas, Psy.D. and am over the age of eighteen (18), and am suffering under no legal disability. I make the following statements from personal knowledge, and if called upon to testify in person would testify to the facts as contained in this Affidavit.

2.

I specialize in helping children and families and have over 25 years of experience in mental health services working with children, adolescents, adults, families and couples. My areas of special interest include parenting issues, marital/couples therapy, divorce, custody and blended family issues, and childhood behavior difficulties. As a recognized expert in child and family issues, I am regularly appointed by Atlanta area courts to conduct custody, parental fitness and psychological evaluations. I have served as a consultant to C.N.N., ABC News, CBS News, WebMD, and Parents Magazine, and to many Atlanta area televisions and radio programs, schools and courts. Please see attached hereto a copy of my Curriculum Vitae.

3.

On or about August 23, 2010, I met with Stacy Rutter, and shortly thereafter I began sessions with the minor children, *to-wit*: Lindsey Price Rutter, born January 11, 2000; Audrey Elizabeth Rutter, born November 11, 2002; and Charles Wayne Rutter III, "Trey," born December 20, 2006.

To date, I have had approximately 18 sessions with the children, individually and together. After meeting with the minor children and interacting with them over the course of 7 months, it is my professional opinion that the children have behavioral and emotional issues.

Trey has behavioral issues, such as fits of violent and destructive rages, especially when he s frustrated or when he doe not get his way. Audrey is angry and often emotionally shuts down in her sessions with me. Although she does participate in playing she often refuses to engage in conversation and answer questions. Recently, she expressed some suicidal ideation. Lindsay is more verbal, but very guarded in her responses. She appears to have great difficulty expressing her needs and struggles with assertiveness, especially with her parents. It is quite possible these children have experienced emotional trauma.

I have viewed videos which show Mr. Rutter displaying extremely angry and explosive behavior towards and with the children. I have grave concerns about the children being exposed to such behavior and the detrimental impact it could have on them.

In order to help insure that the children are protected from such behavior in the future, it is my opinion that supervised visits be imposed while the children are with Mr. Rutter. Furthermore, Mr. Rutter should undergo an independent and complete psychological evaluation to evaluate his fitness as a parent and to more accurately determine what risk he may pose to the children. Any examiner should have complete access to the videos referenced above, be able to speak with Mrs. Rutter and the guardian in this case Ms. Diane Woods, and to review all records.

Given the videos, my conversations with the Guardian Ad Litem, my sessions with the minor children, and my conversations with Mrs. Rutter, I feel the children need to continue therapy at this time. The children have reported to me they like their new school. It is my professional opinion that it is in the best interest of the children, that they continue to reside with their Mother until the parental fitness of Mr. Rutter can be determined. .

**FURTHER AFFIANT SAYETH NOT.**

This _12th_ day of _March_, 2011.

_Dr. Anthony Levitas, Psy.D._
Dr. Anthony Levitas, Psy.D.

Sworn to and subscribed
before me this _12th_
day of _March_, 2011.

_Notary Public_

# EXHIBIT "B"

COP

IN THE SUPERIOR COURT OF CHEROKEE COUNTY

STATE OF GEORGIA

STACY K. RUTTER,                    *    CIVIL ACTION
                                    *
        Plaintiff                   *    ~~FILE NO. 09-CV-1793-JH~~
                                    *
        vs.                         *    ~~10-CV-979-Fm~~
                                    *
CHARLES W. RUTTER, JR.              *    10-CV-1226 Fm
                                    *
        Defendant                   *

<u>AFFIDAVIT OF WILLIAM B. MOON, CLINICAL PSYCHOLOGIST</u>

Personally appeared before the undersigned attesting officer, authorized by law to administer oaths, WILLIAM B. MOON, Ph.D, who, upon oath, deposes and states as follows:

I am Dr. William Moon, I am over 18 years of age, and I am competent to make this Affidavit.

My Curriculum Vitae is attached hereto and incorporated herein. I currently work at Psychology & Counseling Centers, 17-A Felton Place, Cartersville, GA 30120. I have been in practice in Cartersville, Georgia for twenty years and have been licensed in the State of Georgia as a psychologist since January 28, 1986. Previous to that I worked in the mental health field with a Master of Social Work degree in public mental health in South Georgia for 14 years. My vita is attached hereto, unfortunately, as I haven't changed jobs since 1986, it is old. I hope this affidavit helps Mr. Rutter. He doesn't deserve this kind of treatment.

I am writing to confirm that Charles W. Rutter, Jr. is a patient of mine and has been since Nov 23, 2010. Mr. Rutter has been seen three times in relationship to parenting issues with his children.

I have viewed the video/DVD excerpts provided by Mrs. Rutter's lawyer and I have listened to the tape-recorded conversations from the Nanny Cams that were installed in Mr. Rutter's home. It is my understanding there were at least five cameras. It is also my understanding that these cameras and microphones were in Mr. Rutter's home for approximately two months during a period of time when Mr. and Mrs. Rutter were going through a divorce. It was further my understanding that Mr. Rutter had no knowledge of these cameras or microphones.

Frankly, after viewing the videos my response was, "Is that it?" There are several psychological factors in the tape that are important to note.

I. Incident in the kitchen:

1) His daughter is working with her back to her father and did not see the incident, but apparently heard it as she turned her head.

2) Mr. Rutter's anger was at the trash can, not his daughter.

3) His daughter told Mr. Rutter he was making her scared. It is a significant positive psychological sign that his daughter was comfortable enough with her relationship with her father to tell this to him directly. This is actually evidence of an unusually close and comfortable relationship, not abusive. Many children her age would not have been comfortable enough to express their fear verbally and/or directly, especially if it were perceived to be abusive and/or fearful. Many, if not most would have acted it out in some way. She did not. In fact....

4) His daughter expressed herself with no noticeable change in her behavior at the table.

5) His daughter continued to work at the table after she expressed herself and she did not leave the room.

6) Mr. Rutter did leave the room and had to walk extremely close to his daughter pass her, closing the personal space. She did not move.

7) Mr. Rutter did leave the room but returned to talk to his daughter who continued to work on whatever she was doing.

While Mr. Rutter's behavior was inappropriate because his daughter was near this behavior in my opinion does not constitute abusive behavior and in fact demonstrates an extremely close relationship with his daughter as she was able express herself without changing her focus on a task and he returned to talk to her. Please note in the video that his daughter did not leave when he returned but remained where she was to listen to him.

II. Incident in the living room:

1. His daughter was acting out inappropriately because she did not want to clean up the living room. Not particularly unusual for any child.

2. Mr. Rutter's behavior was clearing inappropriate but not mentally or verbally abusive.

   a) It was not mentally or verbally abusive because he did not degrade his daughter's self-concept, but focused on her behavior, although inappropriately.

   b) His daughter immediately responded and picked up the clothes. She obviously knew her behavior was inappropriate.

   c) More significantly she walked out of the room right past her father apparently without fear she would be harmed. She clearly was not afraid of him and was confident enough she could do this without fear of abusive behaviors.

   d) Mr. Rutter talked to his daughter about his behavior afterwards.

Rutter, C.

It is my professional that while these behaviors are inappropriate they are not abusive. Mr. Rutter is going through a divorce and like most people going through a divorce is stressed, frustrated and at times angry. All of these are normal emotions during a divorce. Divorce is not easy. After talking to Mr. Rutter and viewing the tapes it is my opinion that Mr. Rutter clearly loves his children and wants what is best for them. He clearly does not want to be separated from them and is experiencing severe separation anxiety about being forced to do so. A major problem is all divorces.

To provide more objective data the Child Abuse Potential (CAP) and the State-Trait Anger Expression Inventory – 2 (STAXI-2) were administered to Mr. Rutter. The CAP is an instrument that assesses the potential of an adult to be a physically abusive parent. On the CAP Mr. Rutter's validity scales indicates that he responded to test items as instructed and was not defensive or guarded. His Fake Good Index was within the normal range. His Lie Scale was also within normal limits indicating he is able to admit to minor faults, faults others readily admit. Seven of his 9 clinical scales are within normal limits including his Abuse Scale, Rigidity Scale and Problems with Child and Self Scale. His Unhappiness Scale is significant at the severe level and indicates he is unhappy, sad, and uncomfortable with his adult relationships, which is not unusual for divorcing adults. His Problems with Family Scales is also significant at the severe level and indicates his family situation is not a source of support and encouragement for him.

On the STAXI-2 Mr. Rutter's responses indicate that he was not an angry person when he took the test. His responses indicate that he is not usually an angry person. His responses indicate that when he does get angry he is equally likely to express his anger directly or withhold his anger depending on the situation. His Anger Control- In Scale is significant at the mild level and indicates that when he does get angry he spends a great deal of psychological energy in calming down and reducing his anger as soon as possible.

After having three sessions with Mr. Rutter and administering objective tests that have norm data it is my opinion that Mr. Rutter is not a danger to his children. He is handling the divorce about as well as anyone.

That being said I have recommended that Mr. Rutter continue to be seen in a supportive role. Mr. Rutter he has agreed to be continued to be seen and has

Rutter, C.

an appointment next week. His therapy will focus on helping him deal with his many emotions and frustrations that are associated with divorce. I would be more than agreeable to address any other issue that pleases the Court.

Hopefully this is acceptable to the Court. If there are any questions or concerns please feel free to contact me.

This _6th_ day of _December_, 2010.

Sworn to and subscribed before me
this _6th_ day of _December_, 2010.

_____
NOTARY PUBLIC, GA, STATE AT LARGE
MY COMMISSION EXPIRES: _1-4-74_

_____
WILLIAM MOON, Ph.D.

# VITA

NAME: William B. Moon, Ph.D.

DATE OF BIRTH: July 17, 1943

ADDRESSES:

OFFICE: 11 Maybelle Street
Cartersville, GA 30120
770-386-8996

HOME: 25 Michelle Circle
Atlanta, GA 30342
404-252-4824

MARITAL STATUS: Married
CHILDREN: M. Michelle, William B., Whitney A. & Paul W.

WIFE: Frances R. Moon

## EDUCATION:

| SCHOOL | DEGREE | FIELD | DATE |
|---|---|---|---|
| Florida Institute of Technology<br>A.P.A.-approved clinical program<br>Melbourne, Florida | Ph.D. | Clinical Psychology | Aug 1984 |
| University of Georgia<br>Athens, Georgia | M.S.W. | Clinical Social Work | Apr 1972 |
| Armstrong State College<br>Savannah, Georgia | A.B. | Psychology | Aug 1970 |

## EMPLOYMENT:

Sept. 1985 - present    Self employed as clinical psychologist

Dec 1991 - present    Private practice, general psychology
Cartersville, Georgia

Dec 1991 - Jul 1993    Private practice, general psychology
Douglasville, Georgia

Oct 1987 - Dec 1991    Private practice, general & hospital psychology
Ridgeview Institute - Professional Building South
Smyrna, Georgia

Oct 1987 - Dec 1991    Private practice, general psychology
Dallas, Georgia

Apr 1989 - Jul 1991    Consultant, Staff psychologist
Saint Joseph's Hospital
Atlanta, Georgia

Oct 1987 - Apr 1989   Consultant, Staff psychologist
The New Anneewakee Hospital
Rockmart, Georgia

Apr 1986 - Oct 1987   Consultant, general psychology
Psychological Affiliates
Marietta, Georgia

Dec 1985 - Apr 1986   Consultant, Staff psychologist
Anneewakee Hospital
Douglasville, Georgia

Sept 1985 - Dec 1985   Consultant, child psychologist testing with attention-defsert
Hyperactivity Disorder children
Atlanta Pediatric Psychology Associates
Atlanta, Georgia

May 1980 - Aug 1985   Executive Director, Youth Estates, Inc.
Brunswick, Georgia

Duties: Responsible for planning, developing, and implementing a long-term residential program for emotionally disturbed male youths. This included financial, operational, and programmatic responsibilities.

Jan 1977 - Apr 1980   Coordinator, Mental Health Programs
Pineland MH & MR Services
Statesboro, Georgia

Duties: Responsible for administration of adult, child, and adolescent mental health outpatient services for an eight county area in southeast Georgia.

Oct 1975 - Dec 1978   Coordinator, Child & Adolescent Mental Health Programs
Pineland MH & MR Services
Statesboro, Georgia

Duties: Responsible for administration of child and adolescent mental health outpatient services for an eight county area in southeast Georgia.

Oct 1973 - Sept 1975   Director, Social Services
Anneewakee Hospital
Douglasville, Georgia

Duties: Responsible for delivering family therapy and supervising 4-6 social workers who also provided family therapy for adolescent males in an in-patient setting

Moon, W
Page 3

Apr 1972 - Sept 1973

Assistant Director, Chatham County Day Care Center
Youth Services
Savannah, Georgia

Duties: Responsible for daily operation of day program for committed juvenile delinquents as an alternative to placement in Youth Development Centers.

Jun 1963 - Feb 1967

Psychological Aide
Anneewakee Residential Treatment Center
Douglasville, Georgia

Duties: One of two adult males who supervised 10 emotionally disturbed adolescent males in the residential treatment program.

PART-TIME EMPLOYMENT:

Sept 1985 - Nov 1986

Instructor - Tift College
Douglasville, Georgia

Duties: Taught Sociology and Psychology 100 & 200 level courses

Mar 1980 - May 1980

Instructor - Georgia Southern College
Statesboro, Georgia

Duties: Taught Social Work course at 300 level

Mar 1979 - May 1979

Instructor - St. Leo College
Fort Stewart, Georgia

Duties: Taught Sociology at 100 level

Jan 1977 - Apr 1979

Consultant, Social Services Department
Bulloch Memorial Hospital
Statesboro, Georgia

Duties: Supervised a B.A. level social worker in hospital social work

Sept 1972 - May 1973

Instructor - Armstrong State College
Savannah, Georgia

Duties: Taught Psychology courses at the 100 and 200 level

MILITARY:

Mar 1967 - Dec 1969        U.S. Army        DISCHARGE: Honorable      RANK: E-5

Sept 1968 - Dec 1969

Corpsman
Hunter Army Airfield Hospital
Savannah, Georgia

Duties:  NCOIC of immunization clinic.  Gave all shots for all out-patient clinics located on grounds of the hospital.

Aug 1967 - Aug 1968

Medic
4th Medical Bn
4th Infantry Division

Duties:  Medic assigned to C company, 3rd/12th infantry in central highlands of Vietnam

LICENSE:

Applied Psychology            Georgia #1063

ISSUED:  January 28, 1985

MEMBERSHIPS:

American Psychological Association
Georgia Psychological Association
Society for Personality Assessment
National Register of Health Services Providers in Psychology
International Rorschach Society

STAFF PRIVILEGES:

Ridgeview Institute - Smyrna Georgia



# IN THE SUPERIOR COURT OF CHEROKEE COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| STACY K. RUTER, | * | **CIVIL ACTION** |
| | * | |
| Plaintiff | * | FILE NO.: ~~10-CV-0979-FM~~ |
| | * | |
| VS. | * | 10-CV-1226Fm |
| | * | |
| CHARLES W. RUTTER, JR., | * | |
| | * | |
| Defendant | * | |

## CERTIFICATE OF SERVICE

This is to certify that I have served copies of the affidavits of Dr. William Moon and Linsey Rutter on:

B. J. Abbott
(Attorney for Plaintiff)
Abbott & Abbott
321 East Main Street
Canton, Georgia 30114
and
Diane Woods, Esq.
(Guardian at Litem)
Huff, Woods & Hamby
707 Whitlock Avenue, Suite G-5
Marietta, GA 30064

The affidavits were served on B. J. Abbott by hand delivering same to his office and by email (BJ@abbottandabbott.com), and the copies were served on Diane Woods by email (dianewoods@hwhlawfirm.com) and regular U.S. Mail on the 12th day of January, 2011. The clerk's office was closed on January 12, 2011 due to adverse weather, so this Certificate of Service is filed on the date listed below.

This 13th day of January, 2011.

_____
JENNIFER S. GILL
ATTORNEY FOR DEFENDANT

Bray & Johnson
P. O. Box 1649
Canton, GA 30169
(770) 479-1426

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Benjamin Frederick Windham, Esq.
WINDHAM & ASSOCIATES, P.C.
239 Village Center Parkway
Suite 170
Stockbridge, GA 30281

Bret Moore, Esq.
BRET S. MOORE, ATTORNEY AT LAW, LLC
5447 Roswell Road
Suite 302
Atlanta, GA 30342

Michelle Ritz Jones, Esq.
CARLOCK COPELAND & STAIR, LLP
191 Peachtree Street, NE
Suite 3600
Atlanta, GA 30303

William Curtis Anderson, Esq.
DOWNEY & CLEVELAND
288 Washington Avenue
Marietta, GA 30060

Thomas O. Sippel, Esq.
LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC
500 Colonial Center Parkway
Suite 625
Roswell, GA 30076

Emory Livingston Palmer, Esq.
CARR TABB & POPE
4200 Northside Parkway, NW
10 North Parkway Square
Atlanta, GA 30327

Douglas G. Smith, Jr., Esq.
Hall F. McKinley, III, Esq.
DREW ECKL & FARNHAM
P.O. Box 7600
880 West Peachtree Street, NW
Atlanta, GA 30357

This <u>21</u><sup>st</sup> day of December, 2011.

<u>s/ Amy M. Hoffman</u>
Amy M. Hoffman
Georgia Bar No. 359606
ahoffman@weathingtonfirm.com

*Attorney for Defendants Anthony C. Levitas and Behavioral Institute of Atlanta, LLC*

THE WEATHINGTON FIRM, P.C.
191 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30303
(404) 524-1600 (telephone)
(404) 524-1610 (facsimile)