

**TRAVELERS**

*Travelers 1ˢᵗ Choice⁺ ˢᴹ*

*LAWYERS PROFESSIONAL LIABILITY COVERAGE*
*DECLARATIONS*

POLICY NO.  105256888

**Travelers Casualty and Surety Company of America**
**Hartford, CT 06183**

(A Stock Insurance Company, herein called the Company)

> **Important note: This is a claims-made policy.  To be covered, a claim must be first made against an insured during the policy period or any applicable extended reporting period.**
>
> **The limit of liability available to pay settlements or judgments will be reduced by defense expenses.  The deductible applies to defense expenses.**

This policy is composed of the Declarations, the Professional Liability Coverage, the Professional Liability Terms and Conditions, and any endorsements attached thereto.

| | |
|---|---|
| **ITEM 1** | **NAMED INSURED:**<br>LAW OFFICES OF ABBOTT & ABBOTT, PC<br><br><br>Principal Address:<br>367 ATLANTA STREET<br>MARIETTA, GA 30060 |
| **ITEM 2** | **POLICY PERIOD:**<br>Inception Date: March 24, 2010        Expiration Date: March 24, 2011<br>12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1. |
| **ITEM 3** | ALL NOTICES PURSUANT TO THE POLICY MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE,  OR MAIL AS SET FORTH BELOW:<br><br>Email:  PLclaims@travelers.com<br><br>FAX:    888-460-6622<br><br>Professional Liability Claims Manager<br>Travelers Bond & Financial Products<br>385 Washington Street, MC 9275-NB08F<br>St. Paul, MN 55102 |
| **ITEM 4** | COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:<br><br>Lawyers Professional Liability Coverage |

©2008 The Travelers Companies, Inc. All Rights Reserved

| ITEM 5 | |
|---|---|
| | **PROFESSIONAL LIABILITY COVERAGE LIMITS** |
| | Professional Services and Network and Information Security Offenses Coverage Limits: $500,000 for each **Claim;** not to exceed $1,000,000 for all **Claims** |
| | Publishing and Non-profit Services Coverage Limits: $500,000 for each **Claim;** not to exceed $500,000 for all **Claims** |
| | Deductible: $2,500 each **Claim** N/A all **Claims** |
| | Retroactive Date: March 24, 2006 |
| | Knowledge Date: March 24, 2008 |

| ITEM 6 | ADDITIONAL BENEFITS LIMITS: |
|---|---|
| | Crisis Event Expenses Limits: $10,000 for each **Crisis Event** $30,000 for all **Crisis Events** |
| | Disciplinary or Regulatory Proceeding Expenses Limits: $25,000 for each **Disciplinary or Regulatory Proceeding** $50,000 for all **Disciplinary or Regulatory Proceedings** |

| ITEM 7 | PREMIUM FOR THE POLICY PERIOD: |
|---|---|
| | $2,557.00 Policy Premium |

| ITEM 8 | OPTIONAL EXTENDED REPORTING PERIODS: |
|---|---|

| Additional Premium Percentage: | Additional Months: |
|---|---|
| 125% | 12 |
| 185% | 24 |
| 200% | 36 |
| 250% | 60 |

| ITEM 9 | FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE: |
|--------|-----------------------------------------------|
|        | LPL-1001-1108; PTC-1001-1108; PTC-3010-1108; PTC-2035-1108 |

**The Declarations, the Professional Liability Terms and Conditions, the Professional Liability Coverage, and any endorsements attached thereto, constitute the entire agreement between the Company and the Insured.**

_____
Countersigned By

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

Executive Vice President          Corporate Secretary

©2008 The Travelers Companies, Inc. All Rights Reserved



**TRAVELERS**J

*Travelers 1ˢᵗ Choice✛* ˢᴹ

*LAWYERS PROFESSIONAL LIABILITY COVERAGE*

---

> *Important Note: This is a claims-made policy. To be covered, a claim must be first made against an Insured during the policy period or any applicable extended reporting period.*
> *The limit of liability available to pay settlements or judgments will be reduced by defense expenses. The deductible applies to defense expenses.*
> *Please read the policy carefully.*

---

### CONSIDERATION CLAUSE

**IN CONSIDERATION** of the premium set forth in ITEM 7 of the Declarations, and pursuant to all the terms, exclusions, conditions and limitations of this policy, the Company and the **Insured** agree as follows:

### I.      INSURING AGREEMENT

The Company will pay on behalf of the **Insured**, **Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that no **Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had any basis to believe that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

### II.     SUPPLEMENTARY PAYMENTS

The Company will pay the following with respect to any **Claim** covered by this policy:

A.      All expenses incurred by the Company, other than **Defense Expenses**.

B.      All reasonable expenses incurred by the **Insured** at the Company's request to investigate or defend a **Claim**, provided that the maximum amount available for loss of earnings for time taken off work will not exceed:
   1.      $500 per **Insured Person** per day; and
   2.      $15,000 per **Policy Year** for all **Insured Persons**.

C.      The cost of bonds to release attachments that is within the applicable Professional Liability Coverage Limit, provided that the Company will not be the principal under any such bond and will not have any duty to furnish such bond.

D.      All costs taxed against the **Insured** on that part of a judgment the Company pays.

E.      The cost of any required appeal bond for that part of a judgment that is for **Damages** to which this policy applies, and that is within the applicable Professional Liability Coverage Limit, provided that:
   1.      the Company consents to the appeal of such judgment; and
   2.      the Company will not be the principal under any such bond and will not have any duty to furnish such bond.

   Payment of amounts under section II. SUPPLEMENTARY PAYMENTS will not be subject to a Deductible and will not reduce the applicable Professional Liability Coverage Limits. If the Professional Services and Network and Information Security Offenses Coverage Limits are exhausted by the payment of amounts covered under this policy, the Company will have no further obligation to make payments under section II. SUPPLEMENTARY PAYMENTS.

---

III.   **ADDITIONAL BENEFITS**

The Company will reimburse the **Insured** for the following:

A.   **Crisis Event Expenses** that result from a **Crisis Event** first occurring and reported to the Company during the **Policy Period**.

B.   **Disciplinary or Regulatory Proceeding Expenses** that result from a **Disciplinary or Regulatory Proceeding** first initiated and reported to the Company during the **Policy Period**.

IV.   **DEFINITIONS**

Wherever appearing in this policy, the following words and phrases appearing in bold type will have the meanings set forth in section IV. DEFINITIONS:

A.   *Automatic Extended Reporting Period* means the period of time beginning with the effective date this policy is cancelled or not renewed, and ending:
1.   60 days after such cancellation or nonrenewal takes effect; or
2.   the date any other policy obtained by the **Named Insured** that provides similar coverage for **Professional Services** takes effect,

whichever is earlier.

B.   *Claim* means:
1.   a demand for money or services;
2.   a civil proceeding commenced by service of a complaint or similar pleading; or
3.   a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against any **Insured** for a **Wrongful Act**.

A **Claim** will be deemed to be made on the earliest date such notice thereof is received by any **Principal Insured**.

C.   *Crisis Event* means any:
1.   **Wrongful Act**;
2.   death, departure or debilitating illness of a **Principal Insured**;
3.   potential dissolution of the **Named Insured**;
4.   incident of workplace violence; or
5.   other event,

that the **Named Insured** reasonably believes will have a material adverse effect upon the **Named Insured's** reputation.

D.   *Crisis Event Expenses* means reasonable fees, costs, and expenses incurred by the **Named Insured** for consulting services provided by a public relations firm to the **Named Insured** in response to a **Crisis Event**.

E.   **Damages** means money which an **Insured** is legally obligated to pay as settlements, judgments and compensatory damages; punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages; or prejudgment and postjudgment interest. **Damages** does not include the following:

    1.    Civil or criminal fines; sanctions; liquidated damages; payroll or other taxes; penalties; the multiplied portion of any multiplied damage award; equitable or injunctive relief; any return, withdrawal, restitution or reduction of professional fees, profits or other charges; or damages or types of relief deemed uninsurable under applicable law.

    2.    **Defense Expenses**.

F.   **Defense Expenses** means reasonable and necessary fees, costs and expenses, incurred by the Company, or by the **Insured** with the Company's written consent, that result directly from the investigation, defense, settlement or appeal of a specific **Claim**, provided that **Defense Expenses** do not include any payments made pursuant to sect ion II. SUPPLEMENTARY PAYMENTS of the **Professional Liability Coverage**.

G.   **Disciplinary or Regulatory Proceeding** means any formal administrative or regulatory proceeding by a disciplinary or regulatory official, board or agency, commenced by filing of a notice of charges, formal investigative order, service of summons or similar document, to investigate charges of professional misconduct in the performance of **Professional Services**.

H.   **Disciplinary or Regulatory Proceeding Expenses** means reasonable and necessary fees, costs and expenses incurred by any **Insured** to investigate, defend, or appeal any **Disciplinary or Regulatory Proceeding**.

    **Disciplinary or Regulatory Proceeding Expenses** do not include:

    1.    fines, penalties or sanctions assessed against any **Insured**; or

    2.    expenses, salaries, wages, benefit s, or overhead of, or paid to, any **Insured**.

I.   **Independent Contractor** means any natural person who performs **Professional Services** under contract with, and at the sole direction and control of, an **Insured** , provided that such **Professional Services** inure to the benefit of the **Named Insured.**

J.   **Insured** means any **Insured Person**, **Named Insured**, or **Predecessor Firm**.

K.   **Insured Person** means any natural person who:

    1.    is the sole owner of, or is or was a partner in, the **Named Insured** or **Predecessor Firm**;

    2.    was or is a member of the board of managers, director, executive officer, or shareholder of the **Named Insured** or **Predecessor Firm**;

    3.    was or is an employee of the **Named Insured** or **Predecessor Firm**; or

    4.    was or is an **Independent Contractor** or Of Counsel attorney,

    provided that such person is acting within the scope of their duties on behalf of the **Named Insured** or **Predecessor Firm**.

L.   **Lobbyist** means a lawyer who is registered in accordance with any federal or state statute governing the conduct of lobbyists.

M.   **Named Insured** means the person or entity set forth in ITEM 1 of the Declarations.

N.   **Network and Information Security Offense** means:

    1.    the failure to prevent the transmission of a computer virus or any other malicious code;

    2.    the failure to provide any authorized user of the **Named Insured's** website, or the **Named Insured's** computer or communications network, with access to such website, or computer or communications network; or

    3.    failure to prevent unauthorized access to, or use of, data containing private or confidential information of others.

O.   **Non-Profit Entity** means any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

P.   **Non-Profit Services** means only services that the **Insured** performs for others, with the knowledge and consent of, or as part of the duties regularly assigned by, the **Named Insured**, while serving in the capacity as a:
1.   director, officer or committee member of an attorneys' bar association; or
2.   director, officer or trustee of a **Non-Profit Entity**.

Q.   **O *ptional Extended Reporting Period*** means the period of time specified in the Optional Extended Reporting Period Endorsement, beginning with the effective date this policy is cancelled or not renewed.

R.   **Personal Injury Offense** means any of the following offenses:
1.   False arrest, detention or imprisonment.
2.   Malicious prosecution.
3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor, provided that the wrongful eviction, wrongful entry, or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord, or lessor of that room, dwelling, or premises.
4.   Oral, written, or electronic publication of material that slanders or libels a person or entity or disparages a person's or entity's goods, products, or services, provided that the **Claim** is made by a person or entity that claims to have been slandered or libeled, or whose goods, products, or services have allegedly been disparaged.
5.   Oral, written, or electronic publication of material that appropriates a person's likeness, unreasonably places a person in false light, or gives unreasonable publicity to a person's private life.

S.   **Policy Period** means the period from the Inception Date to t he Expiration Date set forth in ITEM 2 of the Declarations. In no event will the **Policy Period** continue past the effective date this policy is cancelled or not renewed.

T.   **Policy Year** means:
1.   the period of one year following the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof; or
2.   the period between the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof and the effective date this policy is cancelled or not renewed if such period is less than one year.

U.   **Potential Claim** means any conduct or circumstance that might reasonably be expected to be the basis of a **Claim**.

V.   **Pre-Claim Expenses** means reasonable fees, costs and expenses incurred by the Company in the investigation of a specific **Potential Claim**.

W.   **Predecessor Firm** means any law firm that, prior to the Inception Date set forth in ITEM 2 of the Declarations, is dissolved or inactive and is no longer rendering **Professional Services**, and:
1.   some or all of such firm's principals, owners, officers, or partners have joined the **Named Insured** and more than 50% of such firm's assets have been assigned or transferred to the **Named Insured**; or
2.   at least 50% of the principals, owners, officers, or partners of such firm have joined the **Named Insured**.

X.   **Principal Insured** means a member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager, or in-house general counsel of the **Named Insured**.

Y.   *Professional Liability Coverage* means the coverage part set forth in ITEM 4 of the Declarations.

Z.   *Professional Services* means only services in any of the following capacities, and pro-bono services in such capacities, provided that such pro-bono services are performed with the knowledge and consent of the **Named Insured**:
1.   Lawyer.
2.   Law clerk, paralegal, legal secretary or other legal support staff.
3.   Arbitrator or mediator.
4.   **Lobbyist**.
5.   Notary public, provided that the **Insured Person** witnessed and attested to the authenticity of the signature notarized by such **Insured Person**.
6.   **Title Agent**.
7.   Administrator, conservator, receiver, executor, guardian, trustee or any similar fiduciary capacity, directly connected with the **Insured's** practice of law.

AA.   *Publishing* means creating and producing any material directly related to the practice of law in any format for distribution or sale to others, including preparing materials, or presenting seminars, for continuing legal education credit, provided that such **Publishing** is performed with the knowledge and consent of the **Named Insured**.

BB.   *Related Wrongful Acts* means **Wrongful Acts** which are logically or causally connected by reason of any fact, circumstance, situation, transaction, event, or decision.

All **Related Wrongful Acts** are a single **Wrongful Act**, and all **Related Wrongful Acts** will be deemed to have been committed at the time the first of such **Related Wrongful Acts** was committed whether prior to or during the **Policy Period**.

CC.   *Title Agent* means an agent of a title insurance underwriter.

DD.   *Wrongful Act* means any:
1.   actual or alleged act, error, omission, or **Personal Injury Offense** in the rendering of, or failure to render, **Professional Services** or **Non-Profit Services**;
2.   actual or alleged act, error, omission, or **Personal Injury Offense** in **Publishing**; or
3.   **Network and Information Security Offense,**

by the **Named Insured** or any **Predecessor Firm**, or by any other **Insured** while acting within the scope of their duties on behalf of the **Named Insured** or any **Predecessor Firm**.

## V.   EXCLUSIONS

A.   **Beneficiary Or Distributee Of A Trust Or Estate**

This policy does not apply to any **Claim** based upon or arising out of any **Insured's** capacity as a beneficiary or distributee of any trust or estate.

B.   **Claims By An Insured Against Another Insured For Certain Legal Services**

This policy does not apply to any **Claim** by any **Insured** against another **Insured**, provided that this exclusion will not apply to the Company's duty to defend, or to pay **Defense Expenses** for, **Claims** by any **Insured** against another **Insured** that result from any **Insureds** capacity as a lawyer in connection with the following legal services:
1.   Estates.
2.   Trusts.
3.   Probate.
4.   Criminal defense.

5.     Domestic relations.
6.     Residential or commercial real estate closings.

**C.**     **Claims By Certain Persons Or Entities**

This policy does not apply to any **Claim** brought by or on behalf of, or in the name or right of:
1.     the **Non-Profit Entity** or any of its affiliates or subsidiaries;
2.     the attorneys' bar association; or
3.     the directors, officers or trustees of the **Non-Profit Entity** or attorneys' bar association,

in any **Insured's** rendering of, or failure to render, **Non-Profit Services**, provided that this exclusion will not apply if the **Claim** is made and continued by or on behalf of such **Non-Profit Entity** or attorneys' bar association without the solicitation, assistance, active participation or intervention of such **Non-Profit Entity** or attorneys' bar association or their respective directors, officers or trustees.

**D.**     **Contractual Liability**

This policy does not apply to any **Claim** based upon or arising out of liability assumed by an **Insured** under any contract or agreement, whether oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement.

**E.**     **Criminal, Dishonest, Fraudulent Or Malicious Conduct**

This policy does not apply to any **Claim** based upon or arising out of any criminal, dishonest, fraudulent or malicious conduct, or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured**, provided that this exclusion will not apply to:

1.     any **Insured Person** who did not participate in or have knowledge of such conduct or violation; or
2.     the Company's duty to defend, or to pay **Defense Expenses** for, any **Claim** for malicious prosecution or abuse of process.

**F.**     **Employee Retirement Income Security Act** This policy does not apply to any **Claim** based upon or arising out of any **Insured's** services or capacity as a fiduciary under the Employee Retiree Income Security Act of 1974 and its amendments or any regulation or order issued purs uant thereto, except if an **Insured** is deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan.

**G.**     **Expected Or Intended Failure And Internet Service Interruption**

This policy does not apply to any **Claim** based upon or arising out of any **Network and Information Security Offense** that results in:

1.     the failure to provide access to the **Named Insured's** website, or the **Named Insured's** computer or communications network, that was expected or intended by the **Insured**; or
2.     any Internet service interruption or failure, provided that this exclusion will not apply if the interruption or failure was caused by an **Insured**.

**H.**     **Government Demands Or Proceedings**

This policy does not apply to any **Claim** based upon or arising out of a **Network and Information Security Offense** and brought by:

1.     the Federal Trade Commission;
2.     the Federal Communications Commission; or
3.     any other federal, national, state, local, or foreign government, agency, or entity,

provided that this exclusion will not apply to any **Claim** made by such entity in its capacity as a customer or client of the **Named Insured**.

**I.**     **Intentional Misuse Of Money Or Property**

This policy does not apply to any **Claim** based upon or arising out of:

1.     any **Insured's** conversion, commingling, defalcation, misappropriation or other intentional misuse or illegal use of funds, money or property;

2.   the willful or intentional breach or disregard of any oral or written **Title Agent** underwriting or binding authority by any **Insured**,

in any **Insured's** capacity as a **Title Agent**.

J.   **Management Capacity**
This policy does not apply to any **Claim** based upon or arising out of any **Insured's** capacity as a director or officer of any entity other than the **Named Insured**, provided that this exclusion will not apply to the **Insured's** capacity as a director or officer of a **Non-Profit Entity**.

K.   **Management Or Equity Interest**
This policy does not apply to any **Claim** based upon or arising out of **Professional Services** or **Publishing** for any entity that, at the time of the **Wrongful Act**, any **Insured**, or any **Insured Person's** spouse, individually or collectively with one or more **Insureds**, manages, controls or has an equity interest which exceeds 15%.

L.   **Public Official Or Government Employee**
This policy does not apply to any **Claim** based upon or arising out of any **Insured's** capacity as a public official, or employee of a government body, subdivision or agency, provided that this exclusion will not apply to an **Insured's Professional Services** for such government body, subdivision or agency if:
1.   the **Insured** is deemed to be a public official or employee of such government body, subdivision or agency solely because of **Professional Services** to such entity; and
2.   the remuneration for such **Professional Services**, if any, inures to the benefit of the **Named Insured**.

M.   **Securities, Real Estate Or Other Investments**
This policy does not apply to any **Claim** based upon or arising out of the promotion, sale or solicitation by any **Insured** of securities, real estate, or other investments.

## VI.   CONDITIONS

A.   **SETTLEMENT** The Company will not settle a **Claim** without the consent of the **Named Insured**. The Company may, with the consent of the **Named Insured**, settle or compromise any **Claim**, within the applicable Professional Liability Coverage Limits, as the Company deems expedient. In the event that the Company recommends a settlement offer for any **Claim** that is acceptable to the claimant, and the **Named Insured** refuses to consent to such settlement offer, the Company will not pay more for **Damages** and **Defense Expenses** for such **Claim** than the combined total of:

1.   the amount of such proposed settlement offer;
2.   the amount of **Defense Expenses** incurred prior to the date the **Named Insured** refused to consent to the proposed settlement offer; and
3.   50% of the amount of **Damages** and **Defense Expenses** incurred in excess of the combined total of the amounts set forth in 1 and 2 of this section above,

provided that the Company w ill have no obligation to pay **Damages** or any **Defense Expenses**, or to defend or continue to defend any **Claim**, after the applicable Professional Liability Coverage Limit that applies to such **Claim** has been exhausted.

B.   **OTHER INSURANCE**
This policy will apply only as excess insurance over , and will not contribute with, any other valid and collectible insurance available to the **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this policy by reference in such other insurance to this policy. This policy will not be subject to the terms of any other insurance.

**C.**   **DEDUCTIBLE**

The following is added to section I. DEDUCTIBLE of the Professional Liability Terms and Conditions:

If the Company and the first **Named Insured** agree to the final settlement of a **Claim** with the claimant during the initial voluntary mediation of that **Claim** or within 30 days after participation in such mediation, the first **Named Insured's** Deductible obligation for such **Claim** will be reduced by 50% subject to a maximum reduction of $25,000. Deductible payments made prior to the application of the above credit will be reimbursed within 30 days of the resolution of the **Claim**. This reduction does not apply to any **Claim** resolved through voluntary or involuntary arbitration.

No Deductible will apply to **Damages** or **Defense Expenses** for **Claims** that result from the rendering of, or failure to render, pro-bono services in the **Insured's** capacity as a lawyer.

**D.**   **LIMITS**

The following is added to section II. LIMITS of the Professional Liability Terms and Conditions:

2.   Publishing and Non-Profit Services Coverage Limits

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**:

a.   the Company's maximum limit of liability for **Damages** and **Defense Expenses**, for each **Claim** made during the **Policy Year** that results from **Publishing** or the rendering of, or failure to render, **Non-Profit Services** will not exceed the Publishing and Non-Profit Services Coverage Limit for each **Claim** set forth in ITEM 5 of the Declarations;

b.   the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Policy Year** that result from **Publishing** or the rendering of, or failure to render, **Non-Profit Services** will not exceed the Publishing and Non-Profit Services Coverage Limit for all **Claims** set forth in ITEM 5 of the Declarations; and

c.   the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Optional Reporting Period**, if applicable, that result from **Publishing** or the rendering of, or failure to render, **Non-Profit Services** will not exceed the remaining Publishing and Non-Profit Services Liability Coverage Limits for the last **Policy Year** in effect at the time this **Professional Liability Policy** is cancelled or not renewed;

provided that if the Professional Services and Network and Information Security Offenses Coverage Limits are exhausted by the payment of amounts covered under this policy, the Company will have no further obligation to ma ke any payments under the Publishing and Non-Profit Services Coverage Limits.


**TRAVELERS**

*Travelers 1ˢᵗ Choice✛ ˢᴹ*

## PROFESSIONAL LIABILITY TERMS AND CONDITIONS

> *Important Note: This is a claims-made policy.  To be covered, a claim must be first made against an Insured during the policy period or any applicable extended reporting period.*
> *The limit of liability available to pay settlements or judgments will be reduced by defense expenses.  The deductible applies to defense expenses.*
> *Please read the policy carefully.*

These Professional Liability Terms and Conditions apply to the **Professional Liability Coverage**.  If any provision in these Professional Liability Terms and Conditions is inconsistent with or in conflict with any provision of the **Professional Liability Coverage**, the provisions of the **Professional Liability Coverage** will control.

### I.   DEDUCTIBLE

The first **Named Insured** will bear uninsured the amount of any applicable Deductible.

The Company's obligation to pay **Damages** and **Defense Expenses** applies only to the amount of **Damages** and **Defense Expenses** that are in excess of the applicable Deductible for each **Claim** amount set forth in ITEM 5 of the Declarations. The Company may, at its discretion, pay all or part of any Deductible amount on behalf of the first **Named Insured**, and in such event, the first **Named Insured** agrees to repay the Company any amounts so paid.

If ITEM 5 of the Declarations indicates that a Deductible applies for all **Claims**, the **Insured's** obligation to pay **Damages** and **Defense Expenses**, for all **Claims** made during each **Policy Year** will not exceed the Deductible amount for all **Claims** set forth in ITEM 5 of the Declarations.  If there is no Deductible amount shown for all **Claims**, the first **Named Insured** will be responsible for the each **Claim** amount for each and every **Claim**, without further limitation regardless of how often it applies.

### II.   LIMITS

A.   Professional Liability Coverage Limits

1.   Professional Services and Network and Information Security Offenses Coverage Limits

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**:

a.   the Company's maximum limit of liability for **Damages** and **Defense Expenses**, for each **Claim** made during the **Policy Year** that results from a **Network and Information Security Offense** or the rendering of, or failure to render, **Professional Services**, will not exceed the Professional Services and Network and Information Security Offenses Coverage Limits for each **Claim** set forth in ITEM 5 of the Declarations;

b.   the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Policy Year** that result from a **Network and Information Security Offense** or the rendering of, or failure to render, **Professional Services**, will not exceed the Professional Services and Network and Information Security Offenses Coverage Limit for all **Claims** set forth in ITEM 5 of the Declarations; and

c.   the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Automatic Extended Reporting Period** or the **Optional Reporting Period**, if applicable, that result from a **Network and Information Security Offense** or the rendering of, or failure to render, **Professional Services**, will not exceed the remaining Professional Services and Network and Information Security Offenses Coverage Limits for the last **Policy Year** in effect at the time this policy is cancelled or not renewed.

B.    Additional Benefits Limits

    1.    Crisis Event Expenses Limits

    Regardless of the number of **Crisis Events** qualifying for **Crisis Event Expenses**, or the number of persons or entities who are **Insureds**:

        a.    the Company's maximum limit for **Crisis Event Expenses** for each **Crisis Event** first occurring during the **Policy Year** will not exceed the Crisis Event Expenses Limits for each **Crisis Event** set forth in ITEM 6 of the Declarations; and

        b.    the Company's maximum limit for **Crisis Event Expenses** for all **Crisis Events** first occurring during the **Policy Year** will not exceed the remaining Crisis Event Expenses Limit for all **Crisis Events** set forth in ITEM 6 of the Declarations.

    2.    Disciplinary or Regulatory Proceeding Expenses Limits

    Regardless of the number of **Disciplinary or Regulatory Proceedings** qualifying for **Disciplinary or Regulatory Proceeding Expenses**, or the number of persons or entities who are **Insureds**:

        a.    the Company's maximum limit for **Disciplinary or Regulatory Proceeding Expenses** for each **Disciplinary or Regulatory Proceeding** first initiated during the **Policy Year** will not exceed the Disciplinary or Regulatory Proceeding Expenses Limits for each **Disciplinary or Regulatory Proceeding** set forth in ITEM 6 of the Declarations; and

        b.    the Company's maximum limit for **Disciplinary or Regulatory Proceeding Expenses** for all **Disciplinary or Regulatory Proceedings** first initiated during the **Policy Year** will not exceed the remaining Disciplinary or Regulatory Proceeding Expenses Limit for all **Disciplinary or Regulatory Proceedings** set forth in ITEM 6 of the Declarations.

Payment of **Crisis Event Expenses** and **Disciplinary or Regulatory Proceeding Expenses** are not subject to a Deductible and do not reduce the applicable Professional Liability Coverage Limits.

C.    Other Provisions

    Payment of **Damages** and **Defense Expenses** will reduce and may exhaust the applicable Professional Liability Coverage Limits. In the event the amount of **Damages** or **Defense Expenses**, or a combination thereof, exceeds the portion of the applicable Professional Liability Coverage Limits remaining after prior payments of **Damages** or **Defense Expenses**, or a combination thereof, the Company's liability shall not exceed the remaining amount of the applicable Professional Liability Coverage Limits. In no event will the Company be obligated to make any payment for **Damages** or **Defense Expenses** with regard to a **Claim** made after the applicable Professional Liability Coverage Limit has been exhausted by payment or tender of **Damages**, or payment of **Defense Expenses**.

    If the Professional Services and Network and Information Security Offenses Coverage Limits are exhausted by the payment of amounts covered under this policy, the premium for this policy will be deemed fully earned, all obligations of the Company will be completely fulfilled, and the Company will have no further obligations.

## III.    CLAIM DEFENSE

A.    The Company has the right and duty to defend any **Claim** covered by this policy, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**, provided that the Company is not obligated to defend or to continue to defend any **Claim** made after the applicable Professional Liability Coverage Limit is exhausted by payment of **Damages** and **Defense Expenses**.

B.    The **Insured** will cooperate with the Company and, upon the Company's request:

    1.    assist in the defense and settlement of **Claims**;

    2.    assist in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insured** because of a **Wrongful Act**; and

    3.    attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

## IV.  RIGHT TO APPEAL

The Company has the right, but not the duty, to appeal a judgment awarded against an **Insured** in a **Claim** the Company defends.

## V.  TRANSFER CONTROL OF DEFENSE

A.  Before the applicable Professional Liability Coverage Limit is exhausted by the payment of amounts covered under this policy, the **Insured** may take control of the **Claim** defense of any outstanding **Claim** previously reported to the Company, provided that the Company consents to, or a court orders, such transfer of control.

B.  If the applicable Professional Liability Coverage Limit is exhausted by the payment of amounts covered under this policy, the Company will notify the **Insured** as soon as practicable of all outstanding **Claims** the Company is defending that are subject to such limit.

C.  The Company agrees to take all steps necessary during a transfer of control of defense to the **Insured** of any outstanding **Claim** to continue that defense during such transfer.  When the Company takes such steps, the **Insured** agrees that the Company does not waive or relinquish any of the Company's rights under this policy.  The **Insured** also agrees to repay the reasonable expenses incurred by the Company for such steps taken after the applicable Professional Liability Coverage Limit has been exhausted.

## VI.  PRE-CLAIM ASSISTANCE

At the Company's discretion, the Company will pay **Pre-Claim Expenses** for a **Potential Claim** reported in accordance with section VIII. NOTICE OF POTENTIAL CLAIMS.  **Pre-Claim Expenses** must be incurred prior to the date that any **Claim** is made based upon or arising out of such **Potential Claim**.  Payment of **Pre-Claim Expenses** is not subject to a Deductible and does not reduce the applicable Professional Liability Coverage Limits.  Once a **Potential Claim** becomes a **Claim**, **Damages** and **Defenses Expenses** that result from such **Claim** are subject to a Deductible and will reduce the applicable Professional Liability Coverage Limits.

## VII.  INSURED'S DUTIES IN THE EVENT OF A CLAIM

In the event a **Principal Insured** becomes aware that a **Claim** has been made against any **Insured**, the **Insured**, as a condition precedent to any rights under this policy, will give to the Company written notice of the particulars of such **Claim**, including all facts related to any alleged **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act**, and the dates of the alleged events, as soon as practicable.  The **Insured** will give the Company such information, assistance and cooperation as the Company may reasonably require.

All notices under this section must be sent or delivered to the Company set forth in ITEM 3 of the Declarations and are effective upon receipt.  The **Insured** will not voluntarily settle any **Claim**, make any settlement offer, assume or admit any liability or, except at the **Insured's** own cost, voluntarily make any payment, pay or incur any **Defense Expenses**, or assume any obligation or incur any other expense, without the Company's prior written consent, such consent not to be unreasonably withheld.  The Company will not be liable for any settlement, **Defense Expenses**, assumed obligation, or admission to which it has not consented.

## VIII.  NOTICE OF POTENTIAL CLAIMS

If a **Principal Insured** becomes aware of a **Potential Claim** and gives the Company written notice during the **Policy Period** of the particulars of such **Potential Claim** including:

A.  all known facts related to the **Potential Claim**;

B.  the identity, if known, of each person allegedly involved in or affected by such **Potential Claim**;

C.  the date such persons became aware of the **Potential Claim**;

D.     the dates of the alleged events; and

E.     the reasons for anticipating a **Claim**,

any **Claim** subsequently made against any **Insured** arising out of such **Potential Claim** will be deemed to have been made on the date such notice was received by the Company.

All notices under this section must be sent or delivered to the Company set forth in ITEM 3 of the Declarations and will be effective upon receipt.

## IX.    RELATED CLAIMS

All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered as a single **Claim** or **Potential Claim** , whichever is applicable. All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be deemed to have been made the date:

A.     the first of such **Claims** for **Related Wrongful Acts** was made; or

B.     the first notice of such **Potential Claim** for **Related Wrongful Acts** was received by the Company,

whichever is earlier.

## X.    SUBROGATION

In the event of payment under this policy, the Company is subrogated to all of the **Insured's** rights of recovery against any person or organization to the extent of such payment and the **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

Section X. SUBROGATION does not apply if the **Insured**, prior to the date a **Wrongful Act** is committed, has waived its right of recovery for **Damages** that result from such **Wrongful Act**.

## XI.    RECOVERIES

All recoveries from third parties for payments made under this policy apply, after first deducting the costs and expenses incurred in obtaining such recovery:

A.     first, to the Company to reimburse the Company for any Deductible amount it has paid on behalf of any **Insured**;

B.     second, to the **Insured** to reimburse the **Insured** for the amount it has paid which would have been paid hereunder, but for the fact that such amount is in excess of the applicable limit hereunder;

C.     third, to the Company to reimburse the Company for the amount paid hereunder; and

D.     fourth, to the **Insured** in satisfaction of any applicable Deductible paid by the **Insured**,

provided that such recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for the Company's benefit.

## XII.    ACQUISITIONS

If, during the **Policy Period**, the **Named Insured** acquires or forms an entity that performs **Professional Services**, coverage will be provided for such acquired or formed entity and its respective **Insured Persons** for **Wrongful Acts** committed after the **Named Insured** acquires or forms such entity. Coverage for such entity will end 90 days after the acquisition or formation of such entity, or the end of the **Policy Year**, whichever is earlier, unless the Company has agreed to provide such coverage by endorsement.

XIII.   **SPOUSAL AND DOMESTIC PARTNER PROFESSIONAL LIABILITY COVERAGE**

This policy applies to **Damages** and **Defense Expenses** for a **Claim** made against a person who, at the time the **Claim** is made, is a lawful spouse or a person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law of an **Insured Person**, but only for a **Wrongful Act** actually or allegedly committed by the **Insured Person**, to whom the spouse is married, or who is joined with the domestic partner.

The Company has no obligation to make any payment for **Damages** or **Defense Expenses** in connection with any **Claim** made against a spouse or domestic partner of an **Insured Person** for any actual or alleged **Wrongful Act** committed by such spouse or domestic partner.

XIV.   **AUTOMATIC EXTENDED REPORTING PERIOD**

If this policy is cancelled or not renewed, the **Automatic Extended Reporting Period** applies without additional premium effective the date such policy is cancelled or not renewed.   The **Automatic Extended Reporting Period** applies to **Claims** made and reported to the Company during the **Automatic Extended Reporting Period**, but only for **Wrongful Acts** committed wholly prior to the effective date this policy is cancelled or not renewed, and which otherwise would be covered.   A **Claim** made during the **Automatic Extended Reporting Period** will be deemed to have been made on the last day of the **Policy Period**.

XV.   **OPTIONAL EXTENDED REPORTING PERIOD**

A.   If this policy is cancelled or not renewed, the **Named Insured** may give the Company written notice that it desires to purchase an Optional Extended Reporting Period Endorsement for one of the periods set forth in ITEM 8 of the Declarations.   The **Optional Extended Reporting Period** applies to **Claims** made during the **Optional Extended Reporting Period**, but only for **Wrongful Acts** committed wholly prior to the effective date this policy is cancelled or not renewed and which otherwise would be covered.   A **Claim** made during the **Optional Extended Reporting Period** will be deemed to have been made on:

1.   the last day of the **Policy Period**; or

2.   if such **Claim** had earlier been reported to the Company during the **Policy Period** as **Potential Claim**, the date notice was received by the Company of such **Potential Claim**,

whichever is earlier.

B.   The premium due for the Optional Extended Reporting Period Endorsement equals the percentage set forth in ITEM 8 of the Declarations of the annualized premium for this policy, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to the date such policy is cancelled or not renewed.   The entire premium for the Optional Extended Reporting Period Endorsement will be deemed fully earned at the commencement of the **Optional Extended Reporting Period**.

The **Optional Extended Reporting Period** will not take effect unless the **Named Insured** has fulfilled all other duties, and complied with all other conditions and requirements under this policy, and:

1.   written notice of such election is received by the Company within 60 days of the effective date such policy is cancelled or not renewed;

2.   the additional premium for the Optional Extended Reporting Period Endorsement is paid when due; and

3.   full payment of the earned premium due, and repayment of any Deductible owed, is received by the Company within 60 days of the effective date such policy is cancelled or not renewed.

When the **Optional Extended Reporting Period** applies, it replaces the **Automatic Extended Reporting Period**.

XVI.    **ACTION AGAINST THE COMPANY**

No action will lie against the Company unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured** , the claimant, and the Company.

No person or entity has any right to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor will the Company be impleaded by an **Insured** or such **Insured's** legal representative. Bankruptcy or insolvency of any **Insured** or an **Insured's** estate does not relieve the Company of any of its obligations hereunder.

XVII.   **CHANGES**

Only the first **Named Insured** is authorized to make changes to the terms of this policy and solely with the Company's prior written consent.  This policy's terms can be changed only by endorsement issued by the Company and made a part of such policy.  Notice to any representative of the **Insured** or knowledge possessed by any agent or by any other person does not effect a change to any part of this policy, or estop the Company from asserting any right under the terms, exclusions, conditions and limitations of this policy, nor may the terms, exclusions, conditions and limitations hereunder be changed, except by a written endorsement to this policy issued by the Company.

XVIII.  **ASSIGNMENT**

This policy may not be assigned or transferred, and any such attempted assignment or transfer will be void and without effect unless the Company has provided its prior written consent to such assignment or transfer.

XIX.    **MISREPRESENTATION**

This policy may be considered void if, after the Inception Date of the **Policy Period** set forth in ITEM 2 of the Declarations, any **Principal Insured** has intentionally concealed or misrepresented any material fact or circumstance, concerning this insurance or the subject thereof, provided that section XIX. MISREPRESENTATION does not apply if such **Principal Insured** mistakenly:

A.      failed to disclose information to the Company; or

B.      mislead the Company.

XX.     **LIBERALIZATION**

If, during the **Policy Period**, the Company makes any changes in the form of this policy that are intended to apply to all **Insureds** that have such forms as part of their policy, and by which the insurance afforded could be extended or broadened by endorsement or substitution of form without increased premium charge, then such extended or broadened insurance inures to the benefit of the **Insured** as of the date the revision or change is approved for general use by the applicable department of insurance.

XXI.    **AUTHORIZATION**

If this policy provides coverage for more than one **Named Insured**, the first **Named Insured** set forth in Item 1 of the Declarations is the sole agent and acts on behalf of all **Insureds** with respect to:

A.      payment of premiums and deductibles;

B.      receiving any return premiums;

C.      receiving notices of cancellation, nonrenewal or change in coverage;

D.     requesting any change in coverage; or

E.     making or, if applicable, consenting to settlement or compromise of any **Claim,**

provided that nothing herein relieves any **Insured** from giving any notice to the Company that is required under this policy.

## XXII.   *HEADINGS*

The titles of the various paragraphs of this policy and its endorsements are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provision to which they relate.

## XXIII.   *CONFORMITY TO STATUTE*

Any part of this policy that conflicts with any requirement of statutory or regulatory law that applies is automatically amended to conform to such law.

## XXIV.   *LEGAL REPRESENTATIVES*

In the event of the death, incapacity or bankruptcy of an **Insured**, any **Claim** made against the estate, heirs, legal representatives or assigns of such **Insured** are deemed to be a **Claim** made against such **Insured**.  Such estate, heirs, legal representatives or assigns have all of the **Insureds** rights and duties under this policy.

## XXV.   *TERRITORY*

This policy applies to **Claims** made for **Wrongful Acts** committed anywhere in the world.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## GEORGIA REQUIRED ENDORSEMENT

This endorsement changes the following:

**Professional Liability Terms and Conditions**

---

**It is agreed that:**

1.  The following sections are added to the Professional Liability Terms and Conditions:

### *CANCELLATION*

The Company may cancel this policy by mailing or delivering written notice of such cancellation to the first **Named Insured** and to any lien holder at least 10 days before the effective date of cancellation, if the cancellation is for nonpayment of premium.  If the Company decides to:

1.  Cancel or not renew this policy;
2.  Increase premium by more than 15%, for a reason other than change in the risk; or
3.  Change any of this policy's rules or provisions that would limit or restrict coverage;

the Company will mail or deliver notice of such cancellation to the first **Named Insured** at least 45 days before the Expiration Date set forth in ITEM 2 of the Declarations.

If the first **Named Insured** is a third-party administrator and this policy provides errors and omissions coverage, the Company will mail or deliver notice of such cancellation or nonrenewal to the first **Named Insured** and the Commissioner of Insurance at least 60 days before the effective date of cancellation.  If the notice is mailed, it will be by registered or certified mail.

The first **Named Insured** may cancel this policy by mailing or delivering the policy to the Company or any of the Company's authorized agents, and provide the future date when cancellation will be effective.  After receiving the written request of cancellation from the first **Named Insured**, the Company can waive the requirement that the notice state the future date of cancellation by confirming the date and time of cancellation in writing to the first **Named Insured**.

### *NONRENEWAL*

The Company will not be required to renew this policy.  If the Company decides not to renew, written notice of nonrenewal will be mailed to the first **Named Insured** at least 45 days before the Expiration Date set forth in ITEM 2 of the Declarations.

The Company will send the notice of cancellation or nonrenewal by first class mail to the last known address of the first **Named Insured**.  A post office certificate of mailing will be sufficient proof of mailing of notice.

### *PROHIBITION OF UNFAIR DISCRIMINATION BY INSURERS AGAINST VICTIMS OF FAMILY VIOLENCE - REQUIRED NOTICE*

The following notice is provided in accordance with a directive from the Georgia Insurance Commissioner addressed to all insurers authorized to transact insurance business in the state of Georgia:

---

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number:  105256888

The laws of the state of Georgia prohibit insurers from unfairly discriminating against any person based upon his or her status as a victim of family violence.

2.  If section **II. LIMITS**, C., in the Professional Liability Terms and Conditions contains a provision that allows for a premium to be fully earned, that provision is deleted.

3.  The following replaces section **XIX. MISREPRESENTATION** in the Professional Liability Terms and Conditions:

This policy may be cancelled if, after the Inception Date of the **Policy Period** set forth in ITEM 2 of the Declarations, any **Principal Insured** has intentionally concealed or misrepresented any material fact or circumstance concerning such **Claim**, this insurance or the subject thereof, provided that this section XIX. MISREPRESENTATION does not apply if such **Principal Insured** mistakenly:

A.  failed to disclose information to the Company; or
B.  mislead the Company.

4.  If section **VI. CONDITIONS, B. OTHER INSURANCE** in the Professional Liability Coverage contains a provision that allows the policy to apply only as excess insurance and not contribute with any other valid and collectible insurance, that provision is deleted.  The policy will share proportionately with any other valid or collectible insurance available to the **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this policy by reference in such other insurance to this policy.  The policy will not be subject to the terms of any other insurance.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

Issuing Company:   Travelers Casualty and Surety Company of America
Policy Number:    105256888
PTC-3010 Ed. 11-08 Printed in U.S.A.
©2008 The Travelers Companies, Inc. All Rights Reserved

---
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
---

## OPTION TO REQUEST A NAMED INDIVIDUAL EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement changes the following:

Lawyers Professional Liability Coverage

---

**It is agreed that:**

The following is added to section **VI. CONDITIONS**:

**OPTION TO REQUEST A NAMED INDIVIDUAL EXTENDED REPORTING PERIOD ENDORSEMENT**

1. If during the **Policy Period** any **Insured Person**:

   a. becomes disabled and permanently ceases performance of **Professional Services**;

   b. retires and permanently ceases performance of **Professional Services**; or

   c. dies,

   such **Insured Person** or the **Named Insured**, or the Insured Person's executor or estate may request a Named Individual Extended Reporting Period Endorsement that will apply to such **Insured Person.**

2. Any request for such endorsement must:

   a. be made in writing to the Company during the same **Policy Period** or **Policy Year** that the **Insured Person** became disabled, retired, or died, or within 60 days of the ending date of such **Policy Period** or **Policy Year**; and

   b. include evidence of such disability, retirement, or death.

3. The Named Individual Extended Reporting Period Endorsement will not apply to:

   a. **Claims** made while this policy is in force, any successive renewal of this policy is in force, or any extended reporting period that applies to this policy or any renewal of this policy is in force; or

   b. **Claims** if any other insurance applies to the **Claim**.

4. The limits of liability applicable to any **Claim** covered under such endorsement will be shared by all **Insured Persons** who qualify for such an endorsement in a **Policy Year**.

5. There is no charge for the Named Individual Extended Reporting Period Endorsement for eligible **Insured Persons** who become disabled during the **Policy Period** and who permanently cease performance of **Professional Services,** or die.

   The charge for the Named Individual Extended Reporting Period Endorsement for eligible **Insured Persons** who retire during the **Policy Period** is $1,500 per **Insured Person** named in the endorsement.  However, if the **Named Insured** has been continuously insured by the Company, or any of its affiliated insurance companies, for at least three years, no charge will be made for the endorsement.

---

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 105256888

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

Issuing Company:  Travelers Casualty and Surety Company of America
Policy Number:  105256888
PTC-2035  Ed. 11-08  Printed in U.S.A.
©2008 The Travelers Companies, Inc. All Rights Reserved